UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DERRICK B.,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:20-CV-06748 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Derrick B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 14; Dkt. 21). For the reasons discussed below, Plaintiff's motion (Dkt. 14) is granted, the Commissioner's motion (Dkt. 21) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed his application for DIB on December 15, 2016.  (Dkt. 13 at 19, 196-202).[1]  In his application, Plaintiff alleged disability beginning on March 23, 2012.  (*Id.* at 196).  Plaintiff's application was initially denied on April 27, 2017.  (*Id.* at 106-17).  A video hearing was held before administrative law judge ("ALJ") Yvette N. Diamond on May 6, 2019.  (*Id.* at 38-86).  Plaintiff appeared in Horseheads, New York, and the ALJ presided over the hearing from Baltimore, Maryland.  (*Id.* at 19).  On June 26, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 19-33).  Plaintiff requested Appeals Council review; his request was denied on August 4, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990) (holding that review of the Secretary's decision is not *de novo* and that the

Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he

deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)

(citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant

is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467,

470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not

disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an

impairment, or combination of impairments, that is "severe" within the meaning of the Act,

in that it imposes significant restrictions on the claimant's ability to perform basic work

activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2017.  (Dkt. 13 at 21).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from March 23, 2012, the alleged onset date, through December 31, 2017, his date last insured.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: degenerative disc disease of lumbar spine, brachial plexus injury, crush injury to the left hand with partial left pinky amputation, gastroesophageal reflux disease (GERD), left eye visual impairment, headaches, and obesity.  (*Id.*).  The ALJ further found that Plaintiff's depression and anxiety were non-severe.  (*Id*. at 21-22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 23).  The ALJ particularly considered the criteria of Listings 1.02, 1.04, 1.05, 2.02, 2.03, 11.0, 11.02, and Plaintiff's obesity in reaching her conclusion.  (*Id.* at 23-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), additionally limiting Plaintiff to:

> lift and carry ten pounds; stand and/or walk for two out of eight hours; and
> sit for six out of eight hours.  [Plaintiff] could occasionally climb stairs,

balance, stoop, kneel, crouch, or crawl but could not climb ladders.  He could frequently reach, handle, finger, and feel but could not reach overhead with the dominant right upper extremity.  [Plaintiff] required the use of a cane for ambulation.  He could perform frequent reading but no work requiring peripheral vision.  He had limited left eye near acuity, depth perception, color vision, and field of vision.  [Plaintiff] required the option to sit for thirty to sixty minutes and then stand for five to ten minutes as needed throughout the day while remaining on task.  He could not have concentrated exposure to bright light and could not have any exposure to hazards.  [Plaintiff] could operate a vehicle without right eye correction or use of glasses.

(*Id.* at 24).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of charge account clerk, order clerk, and surveillance system monitor.  (*Id.* at 32).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date last insured.  (*Id.*).

## II.  <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ committed reversible error by: (1) failing to properly apply the treating physician rule in assessing the opinion of his primary care provider; and (2) relying upon vocational expert testimony that conflicted with the Dictionary of Occupational Titles without resolving the conflict.  (Dkt. 14-2 at 5-14).  For the reasons set forth below, the Court finds

that the ALJ failed to adequately assess an opinion of Plaintiff's treating physician, and this error necessitates remand for further administrative proceedings.

A. **Application of Treating Physician Rule and Assessment of Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to properly follow the treating physician rule in assessing the opinions of his primary care provider, Sarra Solomon, M.D., particularly with respect to her opinion regarding Plaintiff's satisfaction of the requirements of Listing 1.04(A).   (Dkt. 14-2 at 5-10).   In response, the Commissioner argues that the ALJ thoroughly examined the opinions offered by Dr. Solomon, considered them in developing the RFC, and gave good reasons for the opinions she declined to adopt.  As to the opinion relating to Listing 1.04(A), the Court disagrees.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).   In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence

or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).

Similarly, the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162992, at *16 (W.D.N.Y. Jan. 13, 2015)).  "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he

or she "must consider various factors to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks

omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the treating physician's
> opinion; (iii) the consistency of the opinion with the record as a whole;
> (iv) whether the opinion is from a specialist; and (v) other factors brought to
> the Social Security Administration's attention that tend to support or
> contradict the opinion.

*Id.*  "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step

two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation

omitted).  However, such error is harmless if "a searching review of the record" confirms

"that the substance of the treating physician rule was not traversed."  *Id.* (quotations

omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give

good reasons in [his] notice of determination or decision for the weight [he gives to the]

treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*,

149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that 'the

Commissioner "will always give good reasons"' for the weight given to a treating source

opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by

the evidence in the case record, and must be sufficiently specific. . . ."  *Harris*, 149 F. Supp.

3d at 441 (internal quotation marks omitted).

Dr. Solomon provided an opinion in December 2016 that Plaintiff's spinal condition

- 9 -

meets Listing 1.04(A).  (Dkt. 13 at 312-18).  Dr. Solomon indicated that her opinion was supported by both a December 5, 2016 MRI and by physical examination, which she noted consisted of appointments with Plaintiff monthly or twice monthly for his disc injury/disease.  (*Id.* at 312).  She stated that the MRI showed severe left nerve impingement, and L4-L5 disc herniation.  (*Id.* at 313).  She identified Plaintiff's symptoms as severe back pain, numbness in the legs and feet, left leg giving out, and chronic pain in the legs.  (*Id.*). Dr. Solomon also opined that Plaintiff cannot stand for six to eight hours; can sit for five to ten minutes; can walk less than 200 feet; can rarely reach, handle, or finger; can lift and carry less than five pounds; can bend only thirty degrees; and cannot kneel or squat.  (*Id.* at 28; 314-18).  Dr. Solomon concluded that Plaintiff is unable to work.  (*Id.* at 317).

In her analysis at step three, the ALJ addressed Dr. Solomon's opinion regarding Listing 1.04(A) and concluded that the opinion was only entitled to limited weight.  The ALJ concluded that the opinion was inconsistent with evidence of record and with Dr. Solomon's own treatment notes.  The ALJ gave the remainder of Dr. Solomon's opinions partial weight for several reasons.  First, she noted that whether an individual can work is reserved for the Commissioner.  Second, she acknowledged that Dr. Solomon's treatment records do provide support for some portions of her opinion and credited the records that showed Plaintiff had difficulty with standing, walking, bending, and sitting without interruption.  Third, the ALJ concluded that Dr. Solomon's opinions that Plaintiff had an inability to sit more than 10 minutes and only possessed the ability to rarely handle or finger conflicted with findings from consultative examiner, Gilbert Jenouri, M.D., which

showed that Plaintiff was in no acute distress and had intact dexterity.  In sum, the ALJ

concluded that while portions of Dr. Solomon's opinions were supported, others overstated

Plaintiff's difficulties with sitting and manipulation and the ALJ discounted those portions

of Dr. Solomon's opinions in giving the opinions partial weight overall.

Plaintiff argues that the ALJ failed to explicitly apply the treating physician rule.

He generally argues that the ALJ did not consider the nature and length of his treatment

with Dr. Solomon, key evidence in support of her opinions, or their consistency with the

record as a whole.  In addition, he specifically contends that the ALJ's assessment of Dr.

Solomon's opinion that he meets Listing 1.04(A) requires remand because the ALJ cherry-

picked evidence to discount the opinion.  The Court agrees that the ALJ's assessment of

Dr. Solomon's opinion regarding Listing 1.04(A) was flawed.

Of course, at step three, it is a claimant's burden to establish that his impairments

meet or medically equal one of the listings.  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272

(N.D.N.Y. 2009).  "To match an impairment in the Listings, the claimant's impairment

must meet all of the specified medical criteria of a listing."  *Loescher v. Berryhill*, No. 16-

CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation and

citation omitted).  "If a claimant's impairment manifests only some of those criteria, no

matter how severely, such impairment does not qualify."  *Rockwood*, 614 F. Supp. 2d at

272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet

or equal the Listings, '[w]here the claimant's symptoms as described by the medical

evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (alteration in original) (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)).  "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 WL 1433338, at *3 (internal quotations and citations omitted) (second alteration in original).  An ALJ's failure to provide an analysis of a claimant's symptoms with respect to the Listings can justify remand.  *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *3 (W.D.N.Y. June 4, 2019) (citing *Torres v. Colvin*, No. 14-CV-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) and *Cherico v. Colvin*, No. 12 Civ. 5734(MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014)).  However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F.Supp.2d 330, 338-39 (S.D.N.Y. 2001).

Social Security regulations provide the following with regard to the requirements of Listing 1.04(A):

> Listing 1.04(A) requires—in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture—"[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated

muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

*Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017) (citing Listing 1.04(A)).  The SSA "has provided further guidance regarding the assessment of Listing 1.04(A) in the form of an Acquiescence Ruling ('AR') issued in 2015."  *Monsoori*, 2019 WL 2361486, at *4; *see* SSAR 15-1(4), 80 Fed. Reg. 57418-02 (2015).  Although ARs are guidance documents that do not carry the full force of law, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference.  *See Kisor v. Wilkie*, ___ U.S. ___. 139 S. Ct. 2400, 2419 (2019) ("[T]he Congress delegating regulatory authority to an agency intends as well to give that agency considerable latitude to construe its ambiguous rules."); *Auer v. Robbins*, 519 U.S. 452, 462-63 (1997).

In AR 15-1(4), the SSA specifies "that for a disorder of the spine to meet listing 1.04A at step three in the sequential evaluation process, the claimant must establish the simultaneous presence of all the medical criteria in paragraph A."  80 Fed. Reg. at 57420.  After these criteria are established, "the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months."  *Id.*  In other words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A."  *Id.*  The Court follows other courts in this District and finds that the SSA's finding in AR 15-1(4) is entitled to substantial deference.  *See Ramirez Morales v. Berryhill*, No. 6:17-CV-06836-MAT, 2019

WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019) ("While the Court notes that the AR was

issued in response to the Fourth Circuit's holding in *Radford v. Colvin*, 734 F.3d 288 (4th

Cir. 2013), that plaintiff could meet Listing 1.04(A) even though his relevant symptoms

were not always simultaneously present, the Second Circuit has not made a similar holding.

Accordingly, this Court will accord the policy position set forth in AR 15-1(4) substantial

deference.").

Here, in her discussion of whether Plaintiff's impairments met or medically equaled

Listing 1.04, the ALJ stated:

> I have considered whether [Plaintiff's] degenerative disc disease meets or
> medically equals Listing 1.04.  However, the medical evidence does not
> indicate consistent reduction of range of motion, muscle strength, and
> sensory or reflex function sufficient to meet the listing.  Imaging of
> [Plaintiff's] back does not show any signs of spinal arachnoiditis, as required
> to meet Listing 1.04 (Exhibit 18F/12).  While [Plaintiff] has required a cane
> for ambulation, he retains the ability to ambulate effectively as defined in
> Paragraph 1.00(B)(2)(b).  Accordingly, [Plaintiff's] back impairment does
> not meet the criteria of any listing.
>
> Sarra Solomon, M.D., [Plaintiff's] primary care provider, gave an opinion in
> December 2016 that [Plaintiff's] spinal condition meets Listing 1.04(A).
> (Exhibit 4F/2).  However, treatment records from December 2016 indicated
> no definite weakness despite positive straight leg raises, inconsistent with
> requirement of muscle weakness (Exhibit 5F/1).  Dr. Solomon's own
> treatment notes further fail to support her opinion, describing intact sensation
> in April 2016 and in September 2016 (Exhibit 9F/42, 53).  Therefore, I give
> this statement limited weight.

(Dkt. 13 at 23).

As noted, the first reason that the ALJ relied on to discredit Dr. Solomon's opinion

was a December 2016 treatment record which "indicated no definite weakness despite

positive leg raises, inconsistent with the requirement of muscle weakness." (*Id*. at 23).  But

the record in question from David C.Y. Kung, M.D., Plaintiff's neurosurgeon, states that Plaintiff has "no definite weakness *of the dorsiflexors of the feet and toes.*" (*Id.* at 402 (emphasis added)). The ALJ's omission of the highlighted qualifier from her decision tends to suggest a broader ability than may be reflected in the record and arguably portrays the record as more benign than it appears. Indeed, the same medical record specifically reflected Plaintiff's "leg weakness" as one of his symptoms and also noted that a pinprick test revealed "multiple dermatomal hypalgesia" in both legs and feet. (*Id.*). Dr. Kung recommended an electromyography and nerve conduction study to see why Plaintiff has multiple dermatomal hypalgesia as well as an SI joint injection to see if Plaintiff's pain was coming from this joint. (*Id.*). The use of this record to discredit Dr. Solomon's opinion accordingly appears to be overstated by the ALJ. *See Woods v. Saul*, No. 1:19-CV-0336S(SN), 2021 WL 848722, at *14 (S.D.N.Y. Mar. 5, 2021) ("The Commissioner[']s position is overstated. It is true that some of the relevant evidence is inconsistent, but the Commissioner's contention that there is no evidence supporting a finding under Listing 1.04A is imprecise.").

The only other reason provided by the ALJ to not credit Dr. Solomon's opinion with regard to Listing 1.04(A) was that her "own treatment notes further fail to support the opinion, describing intact sensation in April 2016 and September 2016." (Dkt. 13 at 23). To be sure, the April 4, 2016 record does reflect "normal sensation in legs," (*id.* at 700) and the September 7, 2016 treatment note reflects "normal sensation in feet *today*," (*id.* at 711 (emphasis added)). Arguably, the word "today" in this instance suggests that intact

sensation may be an intermittent symptom.  *See Yankelevich v. Comm'r of Soc. Sec.*, No.
20-CV-1776 (BMC), 2021 WL 1616208, at *1 (E.D.N.Y. Apr. 26, 2021) ("That is why the
regulations recognize that positive findings in musculoskeletal impairments may be
'intermittent.' 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D.  More than that, the
regulations explain what to do when the positive findings are intermittent: Because
abnormal physical findings may be intermittent, their presence over a period of time must
be established by a record of ongoing management and evaluation.  Care must be taken to
ascertain that the reported examination findings are consistent with the individual's daily
activities.'" (quotation and citation omitted)).  Plaintiff notes that both records occurred
prior to an additional injury suffered in October 2016.

But beyond those two records and contrary to the ALJ's characterization, a review
of Dr. Solomon's records before and after the provision of her opinion reflect multiple
entries documenting Plaintiff's sensory or reflex loss, as well as muscle weakness.  Indeed,
Dr. Solomon's treatment notes from the date she issued her opinion reflects Plaintiff to
have "pain in back with leg raising—very limited ability to raise legs—reflex on left
decreased some decreased sensation left and right leg."  (Dkt. 13 at 722).  Other records
document similar limitations.  For example, a July 7, 2015 record indicates Plaintiff had
reduced strength in legs in addition to very limited motion due to pain and paraspinal
muscle spasms.  (*Id.* at 679).  An August 13, 2015 record documented "moderate leg
strength," (*id.* at 681) and a November 30, 2015 record noted Plaintiff's stiff posture and
very limited back flexibility (*id.* at 691).  A May 4, 2016 record reflects "some reduced

muscle strength in legs" (*id.* at 702), a November 21, 2016 record shows limited flexion due to pain and an inability to twist (*id.* at 718), and an April 12, 2017 record documents a limited range of motion in the lower back muscles and noted that Plaintiff's thighs were atrophic and that he had "some decreased sensation and strength" (*id.* at 836-37).   A June 12, 2017 treatment note indicates that Plaintiff had pain down his legs and poor range of motion, inability to perform leg raises due to pain, and the muscles in his thighs were atrophic.   (*Id.* at 829-30).   A July 12, 2017 record documents some atrophy in Plaintiff's leg and thigh muscles, (*id.* at 826-27), and an August 21, 2017 reflects poor leg raising ability due to back pain and legs with muscle atrophy bilaterally (*id.* at 824).   A November 1, 2017 record indicates thigh muscle atrophy and limited range of motion and flexibility. (*Id.* at 818).

Certainly the ALJ is not required to discuss every piece of evidence.   *See Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021).   But, here, the ALJ's selective reading of the treatment records and highlighting two records showing normal sensation while ignoring many other entries supporting Dr. Solomon's opinion amounted to impermissible cherry-picking and cannot constitute a "good reason" to not give the opinion controlling weight. *Angelo A. C. v. Comm'r*, No. 20-CV-1579-A, 2022 WL 682654, at *6 (W.D.N.Y. Mar. 8, 2022) ("It is well-settled that an ALJ cannot 'cherry pick' only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence." (quotation and citation omitted)).   And in this instance, the error was not harmless because had the ALJ credited Dr. Solomon's opinion on Listing 1.04(A), it would have warranted a finding

that Plaintiff is disabled.  *Newell v. Saul*, No. 19-CV-10831 (JLC), 2021 WL 608991, at *21 (S.D.N.Y. Feb. 17, 2021) ("Indeed, the proper application of the treating physician rule is potentially dispositive in determining whether Newell is disabled within the meaning of the Act."); *Roman v. Saul*, No. 19-CV-3688 (JLC), 2020 WL 4917619, at *20 (S.D.N.Y. Aug. 21, 2020) (ALJ's treating physician analysis not harmless error where had ALJ credited treating physician's opinion, it could have resulted in conclusion that claimant was disabled)

To be clear, the Court takes no position as to whether or not Plaintiff satisfies Listing 1.04(A).  It is for the ALJ to determine on remand.  *See Allen v. Saul*, No. 20-CV-0904(EK), 2021 WL 4463287, at *4 (E.D.N.Y. Sept. 29, 2021) ("On remand, the Commissioner should apply the "muscle weakness" standard in Listing 1.04A and explain why the evidence identified above does (or does not) satisfy that standard.  This opinion should be read to express no conclusion on that issue."); *Horton v. Saul*, No. 1:19-CV-08944 (SN), 2021 WL 1199874, at *13 (S.D.N.Y. Mar. 30, 2021) ("Accordingly, upon remand the ALJ should assess whether Horton meets Listing 1.04A, and if she reaffirms her prior conclusion, she should provide 'a clearer explanation' for that decision.").  The Court is simply concluding that the two reasons provided by the ALJ for rejecting the opinion of Dr. Solomon in making her listing determination do not constitute "good reasons," as required by the treating physician rule.  *See Pacheco v. Comm'r*, No. 20-CV-5975 (JLC), 2022 WL 702303, at *9 (S.D.N.Y. Mar. 9, 2022) ("Indeed, [c]ourts have not hesitate[d] to remand [cases] when the Commissioner has not provided good reasons." (quotation and

citation omitted)); *Leonard K. v. Comm'r of Soc.* Sec., No. 2:19-CV-00011, 2020 WL 7586433, at *12 (D. Vt. Dec. 22, 2020) (remanding where "the ALJ failed to give "good reasons" for failing to accord controlling weight" to treating physician opinions).

Accordingly, because the Court finds error in the ALJ's assessment of Dr. Solomon's opinion and that the error is not considered harmless, remand is warranted on this basis.

**B.    Plaintiff's Remaining Arguments**

To the extent Plaintiff identifies other reasons why he contends the ALJ's decision should be vacated, the Court need not reach those arguments because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary.  *See, e.g., Samantha D. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020); *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 240-41 (W.D.N.Y. 2019).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 21) is denied, and Plaintiff's motion for judgment on the pleadings (Dkt. 14) is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 14, 2022
        Rochester, New York